# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEROME SENEGAL, ERIKA WILLIAMS, BRENT GRIFFIN, IRVIN NASH, AMANDA JASON, and KELLIE FARRISH, on behalf of themselves and those similarly situated, | **No. 18-cv-6006** |
| Plaintiffs, | **Judge Manish S. Shah** |
| v. | |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is entered into by and between Plaintiffs (as hereinafter defined) and the Class of individuals they represent (as hereinafter defined) and Defendant (as hereinafter defined).

## I.    INTRODUCTION

Subject to approval by the Court, this Settlement Agreement sets forth the full and final terms by which the Named Plaintiffs, on behalf of themselves and a Class of African American and Black Financial Advisors ("FAs"), Financial Advisor Associates ("FAAs"), Senior Financial Advisors ("SFAs"), or Private Client Advisors ("PCAs") (collectively, "Advisors") employed by Defendant JPMorgan Chase Bank, N.A. (the "Defendant" or "Chase") or JPMorgan Securities, LLC within Chase Wealth Management at any time between April 13, 2013 and the Preliminary Approval Date, and Defendant (collectively, the "Parties"), have settled and resolved all race discrimination and related retaliation claims that were or could have been raised in the Action to be captioned *Senegal, et al. v. JPMorgan Chase Bank, N.A.*, in the United States District Court

432562

for the Northern District of Illinois and to be initiated by Plaintiffs simultaneously with the filing

of this Settlement Agreement and Release.

## II.   **NATURE AND RESOLUTION OF THE CASE**

A.      In early August of 2016, Plaintiff Jerome Senegal, an African American Advisor

employed by Chase, retained Class Counsel to represent him with respect to his individual and

potential classwide claims of race discrimination and related retaliation in employment.  Plaintiff

Senegal alleged that African American and Black Advisors had been and were being assigned to

less lucrative branches and denied business opportunities, among other things, because of race

and had experienced race discrimination and related retaliation in other terms and conditions of

their employment.

B.      Class Counsel conducted an extensive investigation into the individual and

classwide claims at issue.  They conducted in-depth interviews of potential class members across

the United States and reviewed and analyzed company documents and publicly-available

information, including information about Chase, the financial services industry, and United

States Census data reflecting the demographics of bank territories.

C.      As a result of its investigation, Class Counsel filed charges of discrimination with

the Equal Employment Opportunity Commission ("EEOC") for Plaintiff Jerome Senegal on

February 3, 2017; Plaintiff Erika Williams on February 28, 2017; and Plaintiff Brent Griffin on

March 24, 2017.  Plaintiffs Amanda Jason, Kellie Farrish and Irvin Nash retained Class Counsel

and agreed to serve as Class Representatives shortly thereafter, as Class Counsel's investigation

continued.  Senegal, Williams, Griffin, Jason, Farrish, and Nash are collectively referred to as

Plaintiffs or Named Plaintiffs.

D.      In conjunction with this Settlement Agreement, Plaintiffs will file the Complaint

in the Court to initiate a putative class action on behalf of themselves and a nationwide class of

2

African American and Black Advisors, against the Defendant pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981

("Section 1981").

      E.      In an effort to determine whether the Parties could settle this dispute prior to a

lengthy litigation, the Parties' counsel, who are experienced class action attorneys, participated

in detailed and exhaustive discussions and negotiations, beginning in May of 2017. The parties

also executed an agreement tolling and extending the statute of limitations periods and deadlines

related to the Plaintiffs' claims as of April 21, 2017.

      F.      After exchanging information among counsel about the claims, the Parties

engaged the services of the Honorable Layn Phillips, a former federal judge who currently serves

as a mediator. Judge Phillips became familiar with the case and conducted two mediation

sessions with the Parties and their counsel in New York. Thereafter, Class Counsel and

Defendant's Counsel conducted numerous telephone conferences and an in-person meeting in

New York. The formal mediation sessions and follow-up settlement discussions and meetings

between the Parties culminated in a settlement and the execution of this Settlement Agreement.

During the negotiations, the Parties' counsel bargained vigorously on behalf of their respective

clients. All negotiations were conducted at arm's length and in good faith.

      G.      For settlement purposes, Class Counsel sought, and Defendant produced to Class

Counsel, years of employment workforce data, relevant employment policies, and related

documents concerning the Advisor workforce and work practices relevant to the claims asserted

and damages sought by Plaintiffs and the Class. Class Counsel and the Named Plaintiffs studied

and analyzed the documents and information produced and retained a labor economist from the

University of Pennsylvania. Plaintiffs' expert studied and analyzed over four years of workforce

3

data and publicly available census data, in order to calculate rates of representation, attrition and compensation by race, the assignment of geographical territory by race, and to prepare damages models based on the claims at issue. Class Counsel also conducted extensive factual and legal research in order to properly evaluate the claims and Defendant's defenses in light of the factual record.

H. Counsel for the Defendant conducted its own substantial investigation of the matter, including the facts underlying the claims and issues raised in the charges and the Complaint. The investigation included, among other things, reviewing a substantial number of relevant company records and retaining a labor economist to review relevant data.

I. As a result of the substantial exchange of information, the investigations, and other activity, counsel for the Parties are familiar with the strengths and weaknesses of their respective positions, and have had a full opportunity to assess the litigation risks presented in this Action.

J. Parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including motions to compel arbitration and discovery, motions for class certification, formal discovery, motions for summary judgment, trial, and potential appellate proceedings that would consume time and resources and present each party with ongoing litigation risks and uncertainties. The Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, and have decided that an amicable settlement pursuant to the terms and conditions of this Settlement Agreement is more beneficial to them than continued litigation. Class Counsel believes that the terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate.

K.      Defendant specifically and generally denies all of the claims asserted in the Action, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Action, and makes no concession or admission of wrongdoing or liability of any kind whatsoever.  This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims, or defenses of any party in this case.  By entering into this Agreement, Defendant does not admit or concede, expressly or impliedly, but instead denies that it has in any way violated Title VII, Section 1981, or any parallel federal, state and local laws prohibiting race discrimination or retaliation, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any other obligation or duty at law or in equity.  Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in this Action.

L.      Nothing in this Settlement Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications between the parties, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement, is intended by the Parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature (including, without limitation, the results of the Claims Process established under this Settlement Agreement), as evidence of discrimination, retaliation or harassment or as evidence of any violation of Title VII , Section 1981, parallel federal, state and local laws prohibiting race discrimination or retaliation, the common law of any jurisdiction, or any other federal, state or

local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.  Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered in connection herewith.

III.    **GENERAL TERMS OF THE SETTLEMENT AGREEMENT**

    A.    <u>Definitions</u>.  The defined terms set forth herein shall have the meanings ascribed to them below.

    1.    "Action" means the civil action to be initiated by Plaintiffs in conjunction with this Settlement in the United States District Court for the Northern District of Illinois (the "Court"), to be captioned *Senegal, et al. v. JPMorgan Chase & Co., et al.*, and the allegations contained in, or that could have been contained in, the Complaint filed in the Action.  In no event shall Defendant be required to answer or respond to the Complaint, unless the Court denies approval of the Settlement Agreement.

    2.    "Administrative Costs" means all costs in connection with the administration of the Settlement Agreement and the Settlement Fund including, but not limited to, those related to sending Notice, claims processing, legal advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), the Claims Administrator's fees and expenses, and costs of the claims resolution process, including the fees and expenses of the Neutrals and the Neutral Administrator and experts performing services for the Neutrals or Neutral Administrator in the settlement process.

    3.    "Awards" means the Monetary Awards and the Supplemental Monetary Awards as described in Sections III(A)(24) and III(A)(47) below.

4.     "Claimants" means the Class Members who have submitted a timely Claim Form to the Claims Administrator.

5.     "Claim Form" means the claim forms, Simple or Detailed, that Claimants must submit to the Claims Administrator in order to receive a monetary award in the claims process described in Section VII(C) below.

6.     "Claims Administrator" means the third-party claims administration firm to be mutually agreed to by the Parties to fulfill the duties set forth herein, including to serve Notice, maintain a website accessible to Class Members as described in Section IV(C)(1)(c) below, and administer aspects of the Claims Resolution Process and Settlement Fund pursuant to Section VII below and related orders of the Court.

7.     "Class" means the class that the Plaintiffs seek to have certified, solely for the purposes of this Settlement Agreement, which is defined as:

> All African American and/or Black Financial Advisors ("FAs"), Financial Advisor Associates ("FAAs"), Senior Financial Advisors ("SFAs"), or Private Client Advisors ("PCAs") (as those terms are defined below) employed by JPMorgan Chase Bank, N.A. or JPMorgan Securities, LLC within Chase Wealth Management at any time between April 13, 2013 and the Preliminary Approval Date.

8.     "Class Counsel" means the law firm of Stowell & Friedman, Ltd., and Linda D. Friedman, Suzanne E. Bish, and George S. Robot.

9.     "Class Member" means an individual who is a member of the Class.

10.     "Class Period" means the period running from April 13, 2013 through the Preliminary Approval Date.

11.     "Court" means the United States District Court for the Northern District of Illinois.

7

12. "Covered Positions" means, collectively, current and former Financial Advisors, Financial Advisor Associates, Senior Financial Advisors, and Private Client Advisors (as those terms are defined below), employed by Defendant or JPMorgan Securities, LLC within Chase Wealth Management.

13. "Defendant" or "Chase" means JPMorgan Chase Bank, N.A.

14. "Defendant Releasees" means JPMorgan Chase Bank, N.A., and its current, former, and future affiliates, including, but not limited to JPMorgan Chase & Co. and JPMorgan Securities, LLC, and including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plans (and their agents, administrators, fiduciaries, insurers and reinsurers), principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and representative capacities.

15. "Defendant's Counsel" means the law firms Morgan Lewis & Bockius LLP, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and Defendant's in-house counsel.

16. "Detailed Claim Form" means the form Claimants must submit to the Claims Administrator if they want the option of an individual assessment of their claims and losses by qualified, independent Neutrals (the "Neutrals"), subject to approval by the Neutral Administrator, as part of the Individual Claims Resolution Program ("ICRP").

17. "Diversity and Reserve Fund" means the amount of Four Million Five Hundred Thousand Dollars ($4,500,000) that the Defendant has agreed to allocate to: (a) pay the Administrative Costs; (b) satisfy all Supplemental Monetary Awards; and (c) fund Diversity Programs and Initiatives as described in Section VI below. In no event shall the Diversity and

Reserve Fund exceed more than Four Million Five Hundred Thousand Dollars ($4,500,000) in the aggregate over the Programmatic Relief Period.  Three Million of the Diversity and Reserve Fund shall be deposited into the Qualified Settlement Fund to be used as set forth in Section VI(I)(2).  Any undistributed funds from the Diversity and Reserve Fund deposited with the Claims Administrator for use for Administrative Expenses or Supplemental Awards shall be transferred to Chase for additional funding of Diversity Programs and Initiatives as described in Section VI below.

18.     "Effective Date" means the date on which all of the following have occurred: (1) the Court has finally approved and entered this Settlement Agreement; (2) the Court has entered an Order and Judgment dismissing the Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement; and (3) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing en banc, petitions for certiorari or appellate review) has been finally resolved.

19.     "Fairness Hearing" means the hearing at which the Court will consider final approval of this Settlement Agreement and related matters.

20.     "Final Approval Date" means the date on which the Court grants final approval of the settlement.

21.     "Financial Advisor" or "FA" means a person who is or was employed as a financial advisor by JPMorgan Chase Bank, N.A. or JPMorgan Securities, LLC within Chase Wealth Management.

22.     "Financial Advisor Associate" or "FAA" means a person who is or was employed as a financial advisor associate by JPMorgan Chase Bank, N.A. or JPMorgan Securities, LLC within Chase Wealth Management.

23.     "Judgment" means the judgment to be rendered by the Court pursuant to this Settlement Agreement.

24.     "Monetary Awards" means the Expedited Monetary Awards and individual monetary awards determined by the Neutrals, subject to approval by the Neutral Administrator, for Claimants as described in Section VII below, but not including the Supplemental Monetary Awards, as described in Section III(A)(47) below.

25.     "Named Plaintiff Release" means the General Release Agreement in the form, attached hereto as Exhibit E, agreed to by counsel for the Parties with respect to the Named Plaintiffs as referenced in Section V.

26.     "Net Diversity and Reserve Fund" means the remainder of the Diversity and Reserve Fund after deductions for Administrative Costs and the $1.5 million amount initially set aside for Diversity Programs and Initiatives.

27.     "Net Settlement Amount" means the remainder of the Settlement Amount after deductions for court-approved attorneys' fees and costs as described in Section VIII(A) and court-approved Service Awards as described in Section VIII(B).

28.     "Neutral Administrator" means Lynn Cohn, the individual agreed upon by the Parties and appointed by the Court under Rule 53 of the Federal Rules of Civil Procedure to perform certain duties in connection with this Settlement Agreement as provided in Section VII(D).

29.     "Neutrals" means the independent, qualified third-party neutrals, selected by the Neutral Administrator with substantial training and experience with employment discrimination claims, who will evaluate each Class Member's claim and recommend an individual Award for each Class member as described in Section VII below.

30.     "Notice" means the "Notice of Class Action, Proposed Settlement Agreement, and Fairness Hearing," which the Claims Administrator will mail directly to Class Members and potential Class Members substantially in the forms attached hereto as Exhibits B and C.

31.     "Notice of Award" means the letter sent to each Claimant specifying the amount of that Claimant's award, as determined by the Neutrals and approved by the Neutral Administrator.

32.     "Opt-Out Request" means a written request to the Claims Administrator signed by a Class Member requesting exclusion from the Settlement, which must:  (i) be signed by the Class Member; (ii) contain the name, address, telephone number and last four digits of the Social Security Number of the Class Member requesting exclusion; (iii) clearly state that the Class Member is aware that by opting out he or she will forego the opportunity to receive monetary benefits from this Settlement and that he or she do not wish to be included in the Settlement; (iv) be returned by mail to the Claims Administrator at the specified address; and (v) be received by a date certain, to be specified on the Notice.

33.     "Opt-Outs" means any Class Member who timely submits an Opt-Out Request.

34.     "Order Granting Preliminary Approval" means the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Settlement Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections, substantially in the form attached hereto as Exhibit D.

35.     "Plaintiffs" or "Named Plaintiffs" means Jerome Senegal, Erika Williams, Brent Griffin, Irvin Nash, Amanda Jason and Kellie Farrish.

11

36.     "Preliminary Approval Date" means the date that the Court enters the Order Granting Preliminary Approval.

37.     "Private Client Advisor" or "PCA" means a person who is or was employed as a private client advisor by JPMorgan Chase Bank, N.A. or JPMorgan Securities, LLC within Chase Wealth Management.

38.     "Programmatic Relief Period" means the three (3) year period following the Effective Date during which the Programmatic Relief set forth in this Settlement Agreement shall remain binding on the Parties and their agents and successors.

39.     "Released Claims" means any and all claims of race discrimination or related retaliation arising out of the Named Plaintiffs' and/or Class Members' employment with Defendant or JPMorgan Securities, LLC through the Preliminary Approval Date, known or unknown, that the Named Plaintiffs and Class Members may have against Defendant, its parent, subsidiaries and affiliated companies, and in the case of all such entities, their respective past and present owners, representatives, officers, directors, attorneys, agents, employees, insurers, predecessors, successors and assigns (collectively referred to as the "Released Parties"), arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Action.  This release does not include or cover any conduct or omissions occurring after the Preliminary Approval Date.  Specifically included in this release are any and all race discrimination or related retaliation claims arising out of the Named Plaintiffs' and/or Class Members' employment with Defendant, through the Preliminary Approval Date, the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Action, including but not

12

limited to, claims of alleged racial employment discrimination, related retaliation or benefits claims under Title VII, Section 1981, and any other federal, state, or local statute, common law, or regulation. Furthermore, the Released Claims include all claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII, Section 1981 or any other federal, state, local or common laws or regulations arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the race discrimination or related retaliation claims that were or could have been asserted in this Action.

40. "Senior Financial Advisor" or "SFA" means a person who is or was employed as a senior financial associate by JPMorgan Chase Bank, N.A. or JPMorgan Securities, LLC within Chase Wealth Management.

41. "Service Award(s)" means an amount approved by the Court to be paid to the Plaintiffs as set forth in Section VIII(B) in addition to their Monetary Award as Claimants, in recognition of their efforts in coming forward as Plaintiffs and otherwise benefitting the Class. As a condition of receiving a Service Award, each recipient shall execute an individual general release agreement consistent with the terms of Section V of this Settlement Agreement

42. "Settlement" means the terms and conditions set forth in this Settlement Agreement.

43. "Settlement Amount" means the amount of Nineteen Million Five Hundred Thousand Dollars ($19,500,000) that Defendant shall pay under the terms of this Settlement Agreement for the Monetary Awards to Class Members, including the employee's share of payroll taxes, Class Counsel's attorneys' fees and costs, and Service Awards. The Settlement Amount does not include the employer's share of payroll taxes, which shall be funded

13

separately by the Defendant, or Supplemental Monetary Awards, which shall be paid from the Diversity and Reserve Fund as described in Section VI(I) below.

44.    "Settlement Class" or "Settlement Class Members" means all of the Class Members who do not opt out of the Settlement Class by timely submitting an Opt-Out Request pursuant to Section IV(E).

45.    "Settlement Fund" means the Nineteen Million Five Hundred Thousand Dollars ($19,500,000), including any interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

46.    "Simple Claim Form" means the form Claimants must submit to the Claims Administrator if they **elect** an Expedited Monetary Award and not to participate in the Individual Claims Resolution Program.

47.    "Supplemental Monetary Awards" means the Expedited Monetary Awards or individual Monetary Awards determined by the Neutrals, and approved by the Neutral Administrator, for:  (i) Class Members who were first employed by Defendant or JPMorgan Securities, LLC in a Covered Position within Chase Wealth Management between June 28, 2017 and the Preliminary Approval Date, and (ii) individuals deemed to be Class Members and added to the Class by the Neutral Administrator who were employed by Defendant or JPMorgan Securities, LLC in a Covered Position within Chase Wealth Management at any time during the Class Period who:  (a) self-identified in the EEO category "Two or More Races (Not Hispanic or Latino)," or (b) did not self-identify as any race.

B.    <u>Duration of the Settlement</u>.  The Programmatic Relief set forth in this Settlement Agreement and the agreements incorporated herein shall remain binding on the Parties and their agents and successors for a three (3) year period following the Effective Date.

14

C.     Cooperation.  The Parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.  The Parties agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement, but are not obligated to accept any changes in the monetary amount of relief or material change in the substantive Programmatic Relief provided for herein, or any other material substantive change

D.     Certification of the Class for Settlement Purposes Only.

1.     Within twenty (20) days after the execution of this Settlement Agreement, Plaintiffs will file a Complaint and request that the Court certify the Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).  The Settlement Agreement shall be filed simultaneously with the Complaint, or as soon thereafter as is practicable.  Defendant will not oppose Plaintiffs' request to certify the Class for settlement purposes only.  The Named Plaintiffs and Class Counsel agree that, if the Action were to proceed, they would not argue or present any argument, and hereby waive any argument, based on this settlement or this Settlement Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Settlement Agreement or negotiations that led to settlement, that Defendant should be thereby barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23, or from asserting any and all other potential defenses and privileges.  This Settlement Agreement shall not be deemed an admission by, or a basis for estoppel against, Defendant that class action treatment pursuant to Federal Rule of Civil Procedure 23 in the Action is proper or cannot be contested on any grounds.

2.     If, for any reason, the Court does not approve this Settlement Agreement, fails to enter the Order Granting Final Approval, or fails to enter the Judgment, or if this

15

Settlement Agreement is lawfully terminated for any other reason, then Plaintiffs' prior request for class certification shall be deemed null and void *ab initio*, Plaintiffs shall retain the absolute right to assert any and all claims and to seek class certification, and Defendant shall retain the absolute right to dispute the propriety of class certification on all applicable grounds.

IV.     **COURT APPROVAL, CLASS NOTICE AND FAIRNESS HEARING**

      A.     <u>Jurisdiction</u>.

            1.     The Parties agree that the Court has jurisdiction over the Parties and the subject matter of this Action. The Court shall retain jurisdiction of this Action for three (3) years from the Effective Date of the Settlement Agreement solely for the purpose of entering all orders and judgments authorized hereunder that may be necessary to implement and enforce the relief provided herein.

            2.     If, for any reason, the Court does not approve this Settlement Agreement, fails to enter the Order Granting Final Approval, or fails to enter the Judgment, or if this Settlement Agreement is lawfully terminated for any other reason, Defendant shall have the right to seek to transfer the Action to the United States District Court for the Southern District of New York.

      B.     <u>Preliminary Approval</u>.

            1.     Prior to execution of this Settlement Agreement, the Parties have agreed upon written Notices of this Settlement Agreement to be sent to Class Members and potential Class Members, subject to Court approval.

            2.     Within twenty (20) days after the execution of this Settlement Agreement, Plaintiffs shall file an unopposed motion with the Court for an order preliminarily certifying the Class for settlement purposes; preliminarily approving this Settlement Agreement; approving the Notice to be sent to Class Members and potential Class Members describing the terms of the

Settlement and informing them of their rights to submit objections and to opt out; and

preliminarily enjoining, pending the outcome of the Fairness Hearing, (i) all Class Members

from commencing, prosecuting, or maintaining any claim already asserted in, or encompassed

by, this Action, and (ii) all Class Members (including those who request exclusion) from

commencing, prosecuting, pursuing or maintaining in any court or forum other than the Court

any claim, action or other proceeding that challenges or seeks review of or relief from any order,

judgment, act, decision or ruling of the Court in connection with this Settlement Agreement or

otherwise in connection with this Action.

     C.    <u>Notice to Class Members and Potential Class Members; Responses to the Notice</u>.

     1.    The Court will appoint a Claims Administrator (mutually agreed upon by

the Parties) as the Claims Administrator to perform the following tasks, among others:

     a.    Distribute Preliminary and Final Notice to Class Members and potential Class Members;

     b.    Receive and forward to Class Counsel and Defendant any Objections or Opt-Out Requests from Class Members or potential Class Members;

     c.    Maintain a website on which the Settlement Agreement, Class Notices, blank Claim Forms, related Court Orders, and other documents and content approved by Class Counsel for posting on this website are available to Class Members and potential Class Members, and a secure portal through which Settlement Class Members, following Final Approval of the Settlement, can electronically submit Claim Forms and other documents in a confidential and private manner;

     d.    Distribute and receive Claim Forms and other documents in a confidential manner, including correspondence with and from the Neutral Administrator; and

     e.    Properly process the Monetary Awards and Supplemental Monetary Awards (collectively, the "Awards"), including for tax purposes as directed in Section VII below.

     2.    Defendant will identify all Class Members who self-identified as African-

American and/or Black, and all potential Class Members who self-identified in the EEO category

17

"Two or More Races (Not Hispanic or Latino)", and will provide to the Claims Administrator in electronic format, within fifteen (15) days after the Preliminary Approval Date of this Settlement Agreement, the name, relevant personnel information, and last known address of each Class Member and potential Class Member.  In the event a Class Member or potential Class Member's Notice is returned as undeliverable, Defendant will provide to the Claims Administrator in electronic format, within five (5) business days of Defendant being notified of the undeliverable Notice, the Class Member or potential Class Member's social security number and last known phone number.  The Claims Administrator shall utilize the Class Member's and potential Class Member's social security numbers and last known telephone number for purposes of obtaining a correct address for the Class Member or potential Class Member.  The Claims Administrator shall otherwise keep confidential and shall not disclose the contact information and social security numbers to any other person or entity, including Class Counsel.

3.      Within ten (10) business days after receiving the Class Member and potential Class Member information from Defendant, the Claims Administrator will mail the Notice to each Class Member and potential Class Member in the form agreed upon by Counsel for the Parties or such other form as approved by the Court.

4.      If Final Approval is granted, the Claims Administrator shall mail Claim Forms to each Class Member at the same time the Final Notice is sent and make the Claim Forms available electronically on a website accessible to Class Members maintained by the Claims Administrator.  Settlement Class Members will be able to view and access their individual Claim Forms electronically on the website maintained by the Claims Administrator and may submit them through a secure, non-public portal in a confidential and private manner.

5.      In order to provide the best notice practicable, before mailing the Notice and Claim Forms, the Claims Administrator will run the list of all Class Members and potential Class Members through the United States Postal Service's National Change of Address database ("NCOA").

6.      If envelopes from the mailing of the Notice and Claim Forms are returned with forwarding addresses, the Claims Administrator will re-mail the Notice and Claim Forms to the new addresses within three (3) business days.

7.      In the event that a Notice and Claim Form are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace in an effort to ascertain the current address of the particular Class Member or potential Class Member in question, and, if such an address is ascertained, the Claims Administrator will re-send the Notice and Claim Form within three (3) business days of receiving the newly ascertained address; if no updated address is obtained for that Class Member or potential Class Member, the Notice and Claim Form shall be sent again to the Class Member's or potential Class Member's last known address.  In either event, the duty of the Parties and Claims Administrator to deliver the Notice and Claim Form shall be deemed satisfied once it is mailed for the second time.

8.      The Claims Administrator may engage third party vendors in order to locate Class Members and potential Class Members whose Notice has been returned as undeliverable.

9.      If the Court approves the Settlement at the Fairness Hearing, the Claims Administrator shall mail the Notice of Final Approval of Settlement Agreement within ten (10)

business days of the conclusion of the Fairness Hearing to each Settlement Class Member who did not opt out of the class.

        10.    The Claims Administrator will maintain a log of all of its activities undertaken pursuant to Sections IV and VII.

    D.    <u>Objections</u>.

        1.    Class Member objections to this Settlement Agreement must be in writing, signed, and submitted to the Claims Administrator (with copies served on the Parties' counsel), must include a detailed description of the basis of the objection, and must indicate whether the Settlement Class Member intends to appear at the Fairness Hearing. To be timely and considered by the Court, objections must be received within forty-five (45) days after Notice is mailed to Class Members.

        2.    The Claims Administrator shall provide counsel for both parties all objections it receives from Class Members.

        3.    Only Settlement Class Members who timely submit and serve their signed, written objections and state in writing their intent to appear at the Fairness Hearing may appear at the Fairness Hearing. No one may appear at the Fairness Hearing for the purpose of objecting to the Settlement Agreement without first having submitted and served their written objection(s) within forty-five (45) days after the Notice was mailed to Class Members.

        4.    Class Counsel will file with the Court all timely submitted and served objections with the Motion for Final Approval.

    E.    <u>Exclusions/Opt-Outs</u>.

        1.    Any Class Member who wishes to opt out of the Class must mail to the Claims Administrator a written, signed statement that he or she is opting out. Opt-Out Requests must be received within forty-five (45) days after Notice is mailed to Class Members. Class

Counsel shall file with the Court all timely Opt-Out Requests. The Settlement Class will not include those individuals who timely submit an Opt-Out Request, and individuals who opt out are not entitled to any Award under this Settlement Agreement. The Notice shall include the following language: "Any Class Member who wishes to opt out must mail a written, signed statement that he/she is opting out of the Settlement to the Claims Administrator, at the address listed above. To be effective, this opt out statement must be received on or before [forty-five (45) days after the Notice is scheduled to be mailed to Class Members.]" To be effective, the Opt-Out Request must include the language specified in the Notice confirming that the individual is aware that by opting out he or she will forego the opportunity to receive monetary benefits from this Settlement. Class Members who have timely and properly opted out of the Settlement Class as set forth in this Paragraph may not participate in the Fairness Hearing. The Claims Administrator shall determine whether a Class Member has timely and properly opted out of the Settlement Class.

2.     Class Members who file Opt-Out Requests may rescind their Opt-Out Request. To be effective, such rescissions must be in writing and must be received by the Claims Administrator at least one day before the Fairness Hearing.

F.     <u>Fairness Hearing</u>.

1.     Upon Preliminary Approval, a briefing schedule and Fairness Hearing date will be set at the Court's convenience. The Plaintiffs' Motion for Final Approval will be due no earlier than thirty (30) days following the close of the objection and opt-out period, and the Fairness Hearing will be held no earlier than forty-five (45) days following the close of the objection and opt-out period. Neither this Settlement Agreement nor the Court's Preliminary or Final Approval hereof shall be admissible in any court regarding the propriety of class

certification or regarding any other issue or subject (except for the purpose of enforcing this Settlement Agreement).

2.      The time periods referenced in this Section IV are guidelines; actual dates will be determined by the Court.

3.      In the event that this Settlement Agreement does not become final and binding, no party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including, but not limited to, claims or objections to class certification, and claims and defenses on the merits. Each party reserves the right to prosecute or defend this Action in the event that the Settlement Agreement does not become final and binding.

4.      If this Settlement Agreement is not approved by the Court or for any other reason is terminated or fails to become effective in accordance with its terms (or if, following approval by this Court, such approval is reversed or substantively modified), the Parties shall be restored to their respective positions that existed in this Action prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement shall have no force or effect and shall not be used in this Action or in any proceeding for any purpose; the Settlement Fund shall be returned to Defendant, including any interest earned through the date of termination (after deducting all costs and expenses, including costs of providing Notice to Class Members, and all costs paid or incurred by the Claims Administrator, the Neutral Administrator, or the Neutrals as of the date of termination); any Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the litigation of the Action will resume as if there had been no Settlement Agreement, with no stipulated Class. The Parties retain all rights, claims, and defenses as to class certification and

otherwise as to any of the allegations asserted in this Action. This Settlement Agreement will not be considered an admission of liability or damages by Defendant or represent a cap on damages available to the Named Plaintiffs or the Class.

G. Defendant's Right to Withdraw from the Agreement Based On the Opt-Out Requests.

1. If the number of Class Members who have submitted Opt-Out Requests in the manner provided for herein equals or exceeds the percentage of the total number of Class Members who receive Notice (disclosed in Exhibit A, filed under seal), Defendant shall have the right, for thirty (30) days after the deadline for Class Members to opt out, to withdraw from and fully terminate the Settlement Agreement by providing written notice to Class Counsel and the Court.

2. In the event that Defendant withdraws from this Settlement Agreement or in the event that this Settlement Agreement is reversed on appeal or is otherwise rendered null and void for any reason, the Claims Administrator shall have the obligation to return the entire Settlement Fund (including all income and/or interest, but after deducting all costs and expenses paid or incurred by the Claims Administrator as of the date of the withdrawal, including costs of providing Notice to Class Members) to Defendant within five (5) business days.

## V. RELEASE/BAR OF CLAIMS

A. All Settlement Class Members who do not timely opt out of this Settlement will irrevocably and forever release all Released Claims as defined in Section III(A)(39) above. Settlement Class Members who fail to timely opt out (including their heirs, administrators, representatives, executors, successors, and assigns) expressly waive any and all provisions, rights and benefits conferred under or by any law of any state or territory of

the United States, or principle of common law, which is similar, comparable, or equivalent to,

Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

   B.  All Named Plaintiffs, as a condition of receiving a service award in

conjunction with this Settlement Agreement, will be required to execute and deliver to the

Claims Administrator a Named Plaintiff Release in the form agreed to by counsel for the parties

and attached hereto as Exhibit E. The Named Plaintiff Release is more expansive than the

limited Class Member Release. It releases all of the Named Plaintiffs' individual claims and is a

general release of all claims of any nature against Defendant under federal, state, and local laws

for any period up through the date that the Named Plaintiff signs the Named Plaintiff Release.

   C.  The Claims Administrator shall provide all Named Plaintiffs with the

Named Plaintiff Release at the time the Notice is provided to them.

   D.  The terms of the Releases, set forth in Section III(A)(39) above for

Settlement Class Members and in Exhibit E for the Named Plaintiffs, are a material part of this

Settlement Agreement and are hereby incorporated as if fully set forth in the Settlement

Agreement; if these Releases, set forth in Section III(A)(39) above for Settlement Class

Members and in Exhibit E for the Named Plaintiffs, are not finally approved by the Court, or the

Settlement Agreement cannot become effective for any reason and the Settlement set forth in

this Settlement Agreement terminates as provided in Section IX of this Settlement Agreement,

then the Releases shall terminate *nunc pro tunc* and be of no force and effect.

   E.  Any Named Plaintiff who does not execute and timely deliver a Named

Plaintiff Release shall be ineligible for, and forever barred from receiving a Service Award

under this Settlement Agreement, even if said Named Plaintiff has not opted out. Class

Members who do not opt out shall, upon the Effective Date, be deemed to have fully, finally and irrevocably waived, released and discharged Defendant from the Released Claims.

## VI.    PROGRAMMATIC RELIEF

A.    Duration of the Settlement.  The Programmatic Relief set forth in this Settlement Agreement shall remain binding on the Parties and their agents and successors for three (3) years following the Effective Date (the "Programmatic Relief Period").

B.    Branch Assignment Review.  Defendant shall commission a privileged and confidential review of the branch assignment process for Advisors.  The review will analyze the potential correlation between an Advisor's branch(es) assignment and performance, and examine factors such as branch demographics; branch and personnel designations; data regarding the net worth of the clientele and market, and other branch and territory metrics; assignment of leads, referrals and client accounts to Advisors; and the assignment of Licensed/Private Client Bankers to the Advisors' branches.  The results of this review, and any work product prepared in connection therewith, shall be considered privileged and confidential and shall be protected from disclosure to the fullest extent permissible.  The results of the review shall not be shared with Class Counsel, and shall be protected from disclosure to third parties.

C.    Meetings.

1.    No later than one hundred twenty (120) days after the Final Approval Date, Defendant's Senior management will select one African American and/or Black Financial Advisor and one African American and/or Black Private Client Advisor from each of the five Divisions (Greater West, California, Southern, Midwest and Northeast) and the Head of Chase Wealth Management or his or her delegate will select Division Directors to participate in one in-person meeting and two meetings by telephone or videoconference each year during the

25

Programmatic Relief period to explore ideas and initiatives designed with the objective of increasing the number of African American and Black Advisors and increasing African American and Black Advisor productivity and retention.

        2.      A Project Manager selected by the Head of Chase Wealth Management or his or her delegate shall chair each meeting. The Project Manager will be charged with scheduling meetings and directing discussion at the meetings.

        3.      The Head of Chase Wealth Management or his or her delegate will sponsor the meetings and will receive periodic reports from the Project Manager.

        D.      <u>Advisor Coaching</u>.

        1.      No later than one hundred twenty (120) days after the Final Approval Date, Defendant will make coaching and training available to African American and Black Advisors through the Advancing Black Leaders program (the 'Coaching Program'). Through the Coaching Program, each African American and Black Advisor shall have the opportunity to attend instructor-led sessions focusing on core competencies, including career management, relationship management and navigating the firm. The costs of the Coaching Program shall be funded by the Diversity and Reserve Fund.

        E.      <u>Recruiting</u>.

        1.      No later than one hundred twenty (120) days after the Final Approval Date, Defendant will engage a dedicated resource to develop initiatives designed to increase the recruitment of African American and Black Advisors.

        2.      Upon receiving a conditional offer for an open Advisor position, applicants shall be provided data regarding the branch from which they have received an offer that will consist of: (i) the number of clients serviced by the branch, (ii) the branch's deposits, (iii) the number of affluent households serviced by the branch, (iv) the number of Bankers and

Advisors in the branch, and (v) the net new money levels of the branch's current Advisor(s) from the prior twelve months.  If the branch from which the applicant has received an offer does not have a current Advisor, the applicant will be provided with the net new money levels of previous Advisors.

   F. <u>Management Training and Assessment</u>.

    1. No later than one hundred twenty (120) days after the Final Approval Date, Defendant will hold online diversity training for all Market Directors, which will include training on the concepts of implicit bias and racial stereotyping.  Newly-hired or assigned Market Directors will receive online diversity training within ninety (90) days of their hire or assignment.  Market Directors will be required to attest that they have completed the online diversity training and their attestations will be recorded by Chase.

    2. Defendant will continue to include Managers' diversity efforts as a component in Defendant's assessment of manager performance.

   G. <u>Management Selection</u>.

    1. No later than one hundred twenty days (120) after the Final Approval Date, and on an annual basis thereafter, Defendant will hold regional information meetings for all Advisors to explain the managerial selection process and qualifications, including that all candidates must have the required regulatory licenses.  On an annual basis, Defendant shall send an email to all Advisors who self-identify in the EEO category "Black or African American" identifying the management coaching and training opportunities available to African American and Black Advisors.

    2. Defendant agrees to post all open positions on Defendant's internal job posting site.

3.      Coaching regarding the management selection process will be made available to all African American and Black candidates.

H.      Exit Surveys.

1.      Defendant will offer to conduct voluntary exit surveys with all departing African American and Black Advisors and share a summary of these interviews with the Chase personnel identified in Paragraphs VI(C)(2) and VI(C)(3).

I.      Diversity and Reserve Fund.

1.      No later than one hundred twenty (120) days after Final Approval, Defendant will establish a Diversity and Reserve Fund to fund Diversity Programs and Initiatives and make the payments described in this Section.

2.      All Supplemental Monetary Awards and Administrative Costs shall be paid from the Diversity and Reserve Fund.

3.      Defendant shall initially set aside One Million Five Hundred Thousand Dollars ("$1,500,000") of the Diversity and Reserve Fund for Diversity Programs and Initiatives. Defendant will determine the annual amount of the Diversity and Reserve Fund to spend on such Diversity Programs and Initiatives. The total amount of the Diversity and Reserve Fund during the Programmatic Relief Period shall be no more than Four Million Five Hundred Thousand Dollars ($4,500,000), in the aggregate over the Programmatic Relief Period.

4.      Defendant may establish appropriate rules concerning the use of the Diversity and Reserve Fund for Diversity Programs and Initiatives.

5.      As used in this Settlement Stipulation, "Diversity Programs and Initiatives" refer to any program, study, project, or other expenditure by the Defendant, including those recommended as a result of the meetings described in Section VI(C) that have been

approved by the Head of Chase Wealth Management, which has as at least one of its primary

goals:

    a.    Promoting equal employment opportunity for all persons regardless of race; or

    b.    Providing education concerning any form of racial discrimination, harassment, or related retaliation; or

    c.    Preventing or remedying any form of racial workplace harassment, discrimination, or related retaliation; or

    d.    Fostering recruitment or mentoring of, or employment advancement or promotion opportunities for African Americans at Defendant.

J.    <u>Commitment to Diversity</u>.

1.    Defendant reaffirms its commitment to the prohibition against

discrimination on the basis of race, with respect to compensation, business opportunities, and

other terms and conditions of employment.  Further, Defendant reaffirms its commitment to the

prohibition against retaliation for reporting race discrimination, participating in any internal

complaint process, participating in this or any discrimination settlement, filing a lawsuit or

complaint with any outside agency or entity alleging race discrimination, or for refusing to

participate in race discrimination.

K.    <u>Monitoring and Reporting</u>.

1.    On an annual basis, Defendant will meet with and report to Class Counsel

regarding Defendant's compliance with the Programmatic Relief.  Defendant will provide

information demonstrating the progress made with regard to the Programmatic Relief.

Defendant will also describe to Class Counsel any new programs or policies that were

implemented to increase the representation and success of African American and Black Advisors

and discuss the efficacy of those programs or policies.

29

## VII.   **MONETARY RELIEF**

A.   Settlement Fund

1.   No later than fifteen (15) business days after Preliminary Approval Date, Defendant shall pay by wire transfer or otherwise transmit to the Qualified Settlement Fund established by the Claims Administrator the Settlement Amount of Nineteen Million Five Hundred Thousand Dollars ($19,500,000).  Defendant shall pay or transmit Three Million Dollars ($3,000,000.00) from the Diversity and Reserve Fund to the Qualified Settlement Fund established by the Claims Administrator.  These payments are made in order to satisfy the claims of all Named Plaintiffs and Class Members, as well as for other purposes identified in this Settlement Agreement.  The Settlement Amount, Diversity and Reserve Fund, and the employer's share of payroll taxes and withholdings in connection with monetary awards to the Settlement Class Members and Service Awards, if any, shall constitute the total monetary outlay by Defendant with respect to:  (a) the resolution of this matter; (b) this Settlement Agreement (and attachments); and (c) the dismissal of this Action.

2.   The Settlement Amount and Diversity and Reserve Fund are inclusive of payment for:

a.   All Monetary Awards and Supplemental Monetary Awards paid to Class Members and potential Class Members, including Named Plaintiffs, which are to be distributed pursuant to Sections VII(C) and VII(G) below;

b.   All attorneys' fees and costs awarded by the Court to Class Counsel, including those relating to securing court approval of the Settlement, the claims process and monitoring of the Settlement Agreement, as described in Section VIII(A) below;

c.   All Service Awards to Named Plaintiffs, pursuant to Section VIII(B) below;

30

d.     All Administrative Costs; and

e.     Applicable federal, state, and local income taxes, including the

employee's portion of applicable payroll taxes (*e.g.*, FUTA, SUTA, FICA and Medicare), other

than the employer's share of payroll taxes, which Defendant will bear in addition to the

Settlement Amount (see Section III(A)(43)).

B.     <u>Administration of Settlement Fund</u>.

The Settlement Fund will be placed in an account titled in the name of CWM

Financial Advisors Settlement Fund, a Qualified Settlement Fund, intended by the Parties to be a

"Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986,

as amended, and Treas. Reg. Section 1.468B-1, *et seq.*

C.     <u>Claims Filing Procedures for Settlement of Claims of Named Plaintiffs and
Settlement Class Members</u>.

1.     <u>Claims Filing Procedures for Obtaining Monetary Relief</u>.  All Settlement

Class Members, including the Named Plaintiffs, may be eligible to receive a Monetary Award

from the Settlement Fund or a Supplemental Monetary Award from the Diversity and Reserve

Fund.  All Settlement Class Members, including the Named Plaintiffs, who seek to claim a

Monetary Award from the Settlement Fund or a Supplemental Monetary Award from the

Diversity and Reserve Fund must do so in writing or via secure electronic submission and by

signing or electronically affirming, under penalty of perjury, and submitting to the Claims

Administrator, either a Simple Claim Form or a Detailed Claim Form, as described more fully

below, which must be electronically submitted or received by the Claims Administrator by the

date set by the Court ("Claims Submission Date").  Settlement Class Members shall complete

either the Simple Claim Form or the Detailed Claim Form in its entirety to the extent applicable

and in accordance with the procedures and requirements set forth on the Simple Claim Form or Detailed Claim Form. Class Members who file either a Simple Claim Form or Detailed Claim Form must notify the Claims Administrator of any change of address. A failure to notify the Claims Administrator of a change of address may result in the forfeiture of an Award.

The Simple Claim Form and Detailed Claim Form shall be mailed to Settlement Class Members and be available electronically on a website maintained by the Claims Administrator following Final Approval of the Settlement. Settlement Class Members will be able to view, access, and submit their Simple Claim Forms and Detailed Claim Forms electronically on the website maintained by the Claims Administrator.

2. <u>Claim Form and Monetary Award Options</u>. Settlement Class Members, including Named Plaintiffs, who seek to claim a Monetary Award or Supplemental Monetary Award must elect to submit either a (1) Simple Claim Form if they desire an expedited financial payment without an individual assessment of their alleged claims and losses, or (2) a Detailed Claim Form if they want the option of an individual assessment of their alleged claims and losses by qualified, independent Neutrals (the "Neutrals") as part of the Individual Claims Resolution Program ("ICRP").

Any Settlement Class Member who fails to timely file either a Simple Claim Form or a Detailed Claim Form shall not receive a Monetary Award or Supplemental Monetary Award.

3. <u>Simple Claim Form and Expedited Monetary Awards</u>. Settlement Class Members who elect to submit the Simple Claim Form will be issued a Monetary Award or Supplemental Monetary Award check within forty-five (45) days of the Claims Submission Date ("Expedited Monetary Award"). Settlement Class Members who submit the Simple Claim Form, however, will not have their claims or alleged losses individually assessed as part of the

ICRP. Expedited Monetary Awards will be determined and awarded based on the individual's length of service at Chase and time spent in a Covered Position within the Class Period. Expedited Monetary Awards are not based on an individualized assessment of any Settlement Class Member's claims or consideration of emotional distress or post-termination wage loss. Expedited Monetary Awards will be determined by the Neutral Administrator after all Claim Forms are submitted. The Neutral Administrator's determination of Expedited Monetary Awards shall be final, binding, and non-appealable.

4. Detailed Claim Form and the Individual Claims Resolution Program. Settlement Class Members who wish to have the option of rejecting an Expedited Monetary Award in favor of an individualized assessment of their alleged claims and losses must submit a Detailed Claim Form to the Claims Administrator by the Claims Submission Date. The Detailed Claim Form shall be completed in its entirety, including responses to questions seeking evidence of alleged: (a) race discrimination, (b) financial losses, and (c) any emotional distress. In order to seek financial recovery for any period after the Settlement Class Member's employment with Defendant, the Settlement Class Members must submit qualified documentary evidence of post-Chase income and work history. In order to seek financial recovery for alleged emotional distress, Class Members must complete the section of the Claim Form regarding emotional distress and may submit any additional documentation they deem appropriate.

5. No later than forty-five (45) days after the Claims Submission Date, all Settlement Class Members who timely submit completed Detailed Claim Forms will receive notice of the amount of their Expedited Monetary Award along with an election form (the "Election Form") setting forth two options from which each such Settlement Class Member must elect either (1) accepting the Expedited Monetary Award, or (2) participating in the ICRP. The

Election Form must be signed and identify whether the Settlement Class Member is accepting

the Expedited Monetary Award or electing to participate in the ICRP, and must be received, or

submitted electronically, within 14 days of the date on the Election Form. The Election Form

may also be completed online and signed electronically. The electronic submission is complete

only when the Settlement Class Member receives an online confirmation number.

If the Settlement Class Member elects to accept the Expedited Monetary Award, a check

in the amount of the Expedited Monetary Award will be sent to the Settlement Class Member

within twenty-one (21) days after the Claims Administrator receives the Election Form and all

required income tax documents.

If the Settlement Class Member rejects the Expedited Monetary Award, he or she will

participate in the ICRP and have his or her claims reviewed and evaluated by one or more

Neutrals from a panel of qualified Neutrals. The amount awarded by the Neutral(s) may be more

or less than the Expedited Monetary Award.

      a.     The potential Neutrals identified by Class Counsel and selected by

the Neutral Administrator to serve on the panel of qualified Neutrals will have substantial

training and experience with employment discrimination claims.

      b.     Defendant will provide the Neutrals, the Neutral Administrator and

Class Counsel with copies of Defendant's policies and procedures relating to Advisors.

      c.     Defendant will provide the Neutrals and the Neutral Administrator

with a list of all Class Members and potential Class Members who have released or extinguished

some or all of their potential claims and copies of the agreements and/or materials through which

the Class Members and potential Class Members released or extinguished some or all of their

potential claims. The list, agreements and materials shall not be shared with Class Counsel, and shall be protected from disclosure to third parties.

d. The Neutrals and the Neutral Administrator may, but are not required to, request information from Defendant regarding a Class Member. Defendant will provide sufficient information to establish whether someone is a member of the Class.

e. Each Settlement Class Member who participates in the ICRP will also have an opportunity to meet with a Neutral for up to a 75-minute session in order to present aspects of his or her claims and answer questions from the Neutral(s) (the "Interview"). The Interview can take place via an Internet video-conference or in person at the Chicago offices of Class Counsel. Settlement Class Members who wish to attend the Interview in person but cannot afford to travel to the Interview can submit a request for a travel advance against any Monetary Award or Supplemental Monetary Award. Class Counsel shall ensure that an attorney is present at each Interview to assist Settlement Class Members. Nothing in this Settlement prohibits any Settlement Class Member from retaining his or her own attorney, at his or her own expense, and the Neutral(s) may consider any attorneys' fees incurred. The Neutrals, Neutral Administrator, and all parties appearing at the Interview must agree to confidentiality, and separately retained attorneys must sign a protective order agreed to by the Settling Parties.

f. Any Class Member shall also be entitled to have his or her claim resolved based solely on the written claim form submitted if he or she prefers.

6. <u>Neutral Evaluation of Claims in the ICRP</u>. In evaluating individual claims, the Neutral(s) shall consider information presented in the Detailed Claim Form (including any supporting documents) and during the Interview and then recommend an individual award for each Settlement Class Member who participates in the ICRP. Factors and

evidence the Neutral(s) and Neutral Administrator may weigh include, but are not limited to, the following:

      a.      Length of service in the industry and at Chase;

      b.      Duration of Chase employment within the Class Period;

      c.      Whether the Settlement Class Member was a lateral or recruit from another company and, if so, whether the Settlement Class Member brought over a book of business;

      d.      The Settlement Class Member's alleged experiences with regard to the assignment of territory and banks; the assignment of resources such as licensed bankers; the assignment of leads and referrals; account transfers and distributions; participation in Defendant's programs; business opportunities; managerial support; office environments; and other alleged treatment;

      e.      Whether the Settlement Class Member made a formal or informal complaint of race discrimination, and if so, whether the class member alleged retaliation as a result;

      f.      Whether the Settlement Class Member released some but not all of his or her potential claims and, if so, the date of any such release of claims;

      g.      Any alleged emotional distress, and whether any treatment was sought or received for such alleged distress;

      h.      Any alleged career or reputational harm;

      i.      Any alleged lost opportunities and financial losses;

      j.      Any alleged lost future earnings;

k.      Expenses, including attorneys' fees, incurred by Settlement Class Members in prosecuting Released Claims;

l.      Mitigation and post-Chase earnings; and

m.      Such other factors as the Neutrals and Neutral Administrator agree upon.

D.      The Neutral Administrator

1.      The Parties have agreed upon Lynn Cohn as the individual to be appointed by the Court to serve as the Neutral Administrator under Federal Rule of Civil Procedure 53 to monitor and assist with the Settlement.

2.      The Parties jointly prepared a proposed order appointing the Neutral Administrator, attached hereto as Exhibit F.  The proposed order shall state the name of the Neutral Administrator agreed upon by the Parties and shall describe the Neutral Administrator's duties.

3.      The Neutral Administrator shall participate in some of the Interviews and assessment of claims in the ICRP; train the Neutrals in the ICRP; make reports to Class Counsel and the Court as necessary; negotiate, review, and approve any payments, contracts, the bills of the Neutrals, and the bills of experts performing services for the Neutral Administrator in the settlement process; decide whether to accept any late claim forms for good cause shown; and decide whether individuals who are not included on the Settlement Class list qualify for Settlement Class membership.

4.      The Neutral Administrator shall determine all of the Expedited Monetary Awards and review and approve the Monetary Awards and Supplemental Monetary Awards proposed by the Neutrals in the ICRP for consistency and fairness.  The Neutral Administrator

37

shall render a final determination as to the Monetary Award or Supplemental Monetary Award, if any, which should be paid to each Claimant in the ICRP. There shall be no appeal from the final Monetary Awards or Supplemental Monetary Awards approved by the Neutral Administrator, which shall be final and binding.

5. The Neutral Administrator will also establish, for tax purposes, the allocation of Monetary Awards and Supplemental Monetary Awards to wage and non-wage income or other tax character as appropriate based on the principles set forth in the IRS Regulations. After determining the proposed allocation, the Neutral Administrator shall prepare a master report of all Expedited Monetary Awards and all Awards from the ICRP and provide it to the Claims Administrator for payment.

E. <u>Award Parameters</u>.

1. Class Members and potential Class Members who have released or extinguished their claims shall not be eligible for an Award, unless the Neutral Administrator expressly determines that they are eligible for an Award for good cause shown. In connection with any such application by, or on behalf of, a Class Member who has released or extinguished their claims, Defendant shall have the opportunity to respond prior to the Neutral Administrator's eligibility determination.

2. The total amount of the Monetary Awards shall equal, but not exceed the Net Settlement Amount.

3. The total amount of the Supplemental Monetary Awards shall not exceed the Net Diversity and Reserve Fund.

4. The Neutral Administrator shall prepare a master report of Awards (including tax allocations thereof) and provide it to the Claims Administrator for payment.

38

5.      There shall be no appeal from the final Monetary Awards or Supplemental Monetary Awards determined by the Neutral Administrator.

F.      <u>Confidentiality of Claims Resolution Process and Settlement Administration</u>. Before receiving any Confidential or Confidential-Attorneys' Eyes Only Information, the Claims Administrator, Neutrals, Neutral Administrator and any other third party involved in the claims process or the administration of this Settlement Agreement must sign a confidentiality agreement in a form agreed to by the Parties. Claim Forms completed by Class Members, information submitted by Class Members, the Interviews with the Neutrals, and all other aspects of the Claims Resolution Process will be confidential. No information in the Claim Forms or stated during an Interview shall be disclosed to Defendant, who shall take no part in the determination of the Awards to Settlement Class Members.

G.      <u>Distribution of Awards</u>.

1.      Within twenty (20) business days after the Neutral Administrator has approved Awards to each Claimant in the ICRP, the Claims Administrator shall send a Notice of Award to each eligible Claimant indicating the amount, if any, of the Award approved by the Neutral Administrator for that Claimant, along with a check with their individual Award amount. The face of each such check shall clearly state that the check must be cashed within four (4) months. The back of each such check to Claimants will state: "By negotiating this check and accepting payment I agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this matter. The Release will become effective on the Effective Date."

2.      Any undistributed funds that remain one year after the mailing of the Notice of Award due to un-submitted Named Plaintiff Releases and/or due to uncashed checks

39

shall be incorporated into the Diversity and Reserve Fund for use in Diversity Programs and Initiatives, as described in Section VI. The Parties hereby agree that such funds represent settlement payments for matters disputed in good faith, and they shall not be subject to escheat rules, *cy pres*, or other distribution not provided for in this Settlement Agreement.

3. The Claims Administrator shall provide Defendant's Counsel with copies of all executed Named Plaintiff Releases within twenty (20) business days after the expiration of the deadline for the return of executed Named Plaintiff Releases. The Claims Administrator shall also retain for seven (7) years copies of Award checks negotiated by Claimants and make them available to Defendant upon notice to Class Counsel of good cause –*i.e.*, that the particular individual(s) for whom Defendant seeks this information has asserted a claim in violation of the Class Member Release, Named Plaintiff Release, or has threatened to assert such a claim.

H. <u>Non-Admissibility of Fact of Award or Non-Award</u>. Except to the extent that it would constitute a set-off in an action for damages claimed for any period covered by this Settlement, neither the fact nor the amount of an Award, nor the fact of any non-award, from the Settlement Fund shall be admissible in any other proceeding for any purpose other than to enforce the Class Member Release or Named Plaintiff Release, nor shall it be deemed to be a finding as to the merits of any claim.

I. <u>Confidentiality Regarding Amount of Award</u>. All Claimants receiving Awards will be required to keep the amount of their Award confidential, except that they may disclose the amount to immediate family, legal counsel, or tax advisors, or as otherwise required by law. For the avoidance of doubt, it shall not be a violation of this provision for a Claimant to deposit his or her Award check in a Chase bank or investment account. In the event of a breach of this

paragraph, Defendant may initiate an action in a court of appropriate jurisdiction and, in any such successful action, may be entitled to recover up to the full amount of the Award.

     J.    <u>Tax Treatment</u>

     1.    <u>Qualified Tax Status and Tax Responsibilities</u>.  The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Claims Administrator and Neutral Administrator under the Court's supervision.  The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

     2.    <u>Payment of Federal, State, and Local Taxes</u>.  The Parties recognize that the awards to eligible Claimants will be subject to applicable tax withholding and reporting, which will be handled as follows:

     a.    The Claims Administrator shall serve as trustee of the portion of the Settlement Fund devoted to paying claims ("Claims Fund") and shall act as a fiduciary with respect to the handling, management, and distribution of the claims, including the handling of tax-related issues and payments.  Specifically, the Claims Administrator shall be responsible for withholding, remitting, and reporting of the Claimants' share of payroll taxes from the Settlement Fund, and Defendant shall be responsible for the employer's share of payroll taxes as set forth in this Section (b) below.

     b.    The Claims Administrator shall inform Defendant in writing of the employer's share of all taxes or contributions (*i.e.*, FUTA, SUTA, FICA and Medicare) required to be paid by Defendant.  Defendant shall, within twenty (20) business days of such notice, remit all such payments to the Claims Administrator for payment to appropriate taxing authorities

("Employer Payroll Tax Payment"). The money paid by Defendant under this paragraph shall not be deducted from the Settlement Fund or Diversity and Reserve Fund. Defendant shall have no obligation to pay the employer's share of taxes and contributions pertaining to any Class Members who opt out and therefore receive no Award.

        c.      The Neutral Administrator will establish and provide to the Claims Administrator, for tax purposes, the allocation of Awards to wage and non-wage income or other tax character as is appropriate based on the principles set forth in the IRS Regulations.

        d.      The Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify Defendant for any and all penalties and interest relating to such tax payments, including those arising out of an incorrect calculation and/or late payment of the correct taxes.

        e.      Subject to the Claims Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as non-wage income shall not be subject to withholding and shall be reported, if required, to the IRS on Form 1099.

        f.      Except with respect to the Employer Payroll Tax Payment, which will be paid by Defendant, the Claims Administrator shall be responsible for satisfying from the Claims Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, Medicare, and any state employment taxes.

        g.      The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs and expenses subject to reporting), and any and all taxes, penalties, and other

obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

h.      All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund.  The Parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

i.      Other than the withholding and reporting requirements set forth in Section VII(J)(2)(a), Claimants shall be solely responsible for the reporting and payment of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Settlement Agreement.  Defendant makes no representations and it is understood and agreed that Defendant has made no representations as to the taxability of any portions of the settlement payments to any Claimants, the payment of any cost or an award of attorney fees, or any payments to the Named Plaintiffs.  The Notice will advise Class Members to seek their own tax advice prior to acting in response to the Notice, and the Named Plaintiffs

and Class Counsel agree that Class Members will have an adequate opportunity to seek tax

advice prior to acting in response to the Notice.

        K.      <u>Defendant Has No Further Obligation, Liability or Responsibility</u>.  Other than

Defendant's responsibility for the employer's share of payroll taxes as discussed in Sections

III(A)(43) and VII(J)(2), Defendant shall have no withholding, reporting, or any other tax

reporting or payment responsibilities with regard to the Settlement Fund or its distribution to

Settlement Class Members.  Moreover, Defendant shall have no liability, obligation, or

responsibility for the administration of the Settlement Fund, the determination of any formulas

for disbursement, or the disbursement of any monies from the Settlement Fund except for (1) the

obligation to pay the $19.5 million into the Settlement Fund as described in Section VII(A)(l);

(2) the obligation related to the Diversity and Reserve Fund as set forth in Sections VII(A)(l) and

VI(I); (3) the obligation related to the Employer Payroll Tax Payment as set forth in Section

VII(J)(2); and (4) the agreement to cooperate in providing information necessary for Settlement

administration set forth herein.  The Claims Administrator shall indemnify Defendant for any tax

liability, damages, or penalties arising out of their performance of any duties required by this

Settlement Agreement.

## VIII.   **ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL AND SERVICE AWARDS TO NAMED PLAINTIFFS**

        A.      As discussed in Section III(A)(43) above, all of Class Counsel's fees and costs,

including those in connection with securing Court approval of this Settlement Agreement, the

Claims Process and any monitoring of this Settlement Agreement, shall be paid from the

Qualified Settlement Fund, following approval of those attorneys' fees and costs by the Court.

Subject to approval by the Court, Class Counsel will seek attorneys' fees of up to 24.44% of the

Qualified Settlement Fund, or $5,500,000.00, plus reimbursement of reasonable costs and

expenses.  Defendant shall not object to Class Counsel's requests for fees and costs up to the amounts stated herein.

B.      The Named Plaintiffs have invested substantial time and effort in assisting Class Counsel and serving as fiduciaries for the Settlement Class.  As is standard in class litigation, Class Counsel intends to petition the Court for Service Awards to Named Plaintiffs for their efforts and service to the Settlement Class.  Defendant shall not object to Plaintiffs' motion for Service Award payments up to an amount of $150,000 per Named Plaintiff.  The Neutral Administrator may consider the amount of a Named Plaintiff's Service Award as part of the evaluation of that Named Plaintiff's claim in the ICRP.

## IX.      TERMINATION OF SETTLEMENT

A.      In the event that this Settlement Agreement is not approved in its entirety as is by the Court, excluding modifications that Defendant determines in its reasonable and good faith judgment not to be material modifications, or in the event that the Settlement set forth in this Settlement Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, no payments shall be made by Defendant to anyone in accordance with the terms of this Settlement Agreement, and the Parties will each bear their own costs and fees with regard to the efforts to obtain Court approval.  In such event, this Settlement Agreement (except for this provision and those provisions relating to non-admissibility and non-admission of liability set forth in Sections II(K), II(L) and IV(f)(4)) shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose.  In such event, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Named Plaintiffs in the Action upon all procedural and

substantive grounds, including without limitation the ability to challenge class action treatment on any grounds and to assert any and all other potential defenses or privileges. The Named Plaintiffs and Class Counsel agree that Defendant retains and reserves these rights, and they agree not to take a position to the contrary. The Named Plaintiffs and Class Counsel do not waive, but rather expressly reserve, all rights to assert any claims and allegations and to challenge any and all defenses thereto, upon all procedural and substantive grounds, and to seek class action treatment of any and all of their claims. Defendant agrees that Named Plaintiffs and Class Counsel retain and reserve these rights, and it agrees not to take a position to the contrary. Notwithstanding any other provision of this Settlement Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid to Class Counsel, or reducing the amount of any Service Awards to be paid to any Named Plaintiff, shall constitute grounds for cancellation or termination of this Settlement Agreement or grounds for limiting any other provision of the Judgment.

## X.    CONFIDENTIALITY

A.    <u>Confidentiality of Settlement Negotiations</u>.  Other than necessary disclosures made to the Court, the content of the Parties' settlement negotiations and all related information shall be held confidential by Counsel for the Parties.

B.    <u>Documents and Information Produced by Defendant and Class Counsel</u>.  All proprietary and confidential documents, data, or information that have previously been provided to either Defendant or Class Counsel as of the date this Settlement Agreement is executed, or which are produced by Defendant or Class Counsel pursuant to any provision of this Settlement Agreement shall, unless otherwise agreed, be treated as, and thereafter remain, confidential.  Said documents and information shall not be disclosed to anyone other than the mediator or the Court

46

in connection with any proceeding to enforce any provision of this Settlement Agreement, or as otherwise provided in this Settlement Agreement. If such disclosure is deemed necessary by Class Counsel or Defendant, Class Counsel or Defendant shall identify and disclose to the other party such documents and information deemed necessary to disclose at least ten (10) business days prior to filing such documents with any court, and, if a party so requests, shall seek permission to file said documents with this Court under seal.

      C.    <u>Return or Disposal of Confidential Documents and Information</u>. All proprietary and confidential documents or information that have previously been provided to Class Counsel or to Defendant as of the date this Settlement Agreement is executed, or which are produced by Defendant or Class Counsel pursuant to any provision of this Settlement Agreement, shall, upon request, be destroyed or returned to counsel as follows:

      1.    After the expiration of the three (3) year term of this Settlement Agreement all proprietary and confidential documents or information provided to Class Counsel or Defendant and designated "Confidential for Settlement Purposes Only" or similar designation pursuant to the "Confidentiality Agreement for Settlement Discussions," or that have been produced in confidence pursuant to any provision of this Settlement Agreement, and all copies of such documents or information other than those records and information required to be maintained by law or the rules of professional responsibility, shall, upon request, be returned to counsel for the producing party or be destroyed. Upon request, certification of such destruction shall be provided to counsel for the producing party. This provision will not apply to any information required to be maintained by any party's counsel as part of the case file or under applicable law or rules, including the applicable rules and guidelines of professional responsibility.

2.      The preceding paragraph of this Section is intended to supersede those provisions of the "Confidentiality Agreement for Settlement Discussions" earlier executed by counsel for the parties that address the timing of the return or destruction of proprietary and confidential documents or information provided to Class Counsel or Defendant.  All other provisions of the "Confidentiality Agreement for Settlement Discussions" remain in full effect.

3.      Nothing in the preceding paragraphs of this Section shall preclude any party from responding to a lawsuit discovery request, subpoena, or court order; provided, however, that the party against whom such discovery is sought or such subpoena or order is directed agrees to provide prompt notice and a copy of same to counsel for the other parties to this Settlement Agreement.  Nor shall anything in the preceding paragraphs preclude any party from retaining attorney work product.

## XI.    **Miscellaneous Provisions**

A.      <u>Governing Law</u>.  The Parties agree that federal law shall govern the validity, construction, and enforcement of this Settlement Agreement.  To the extent that it is determined that the validity, construction, or enforcement of this Settlement Agreement, or the Named Plaintiff Release thereunder pursuant to its terms, is governed by state law, the substantive law of New York shall apply.

B.      <u>Entire Agreement</u>.  This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the Parties with respect to the Settlement.  This Settlement Agreement does not impose any obligations on the Parties beyond the terms and conditions stated herein.  Accordingly, this Settlement Agreement shall not prevent or preclude Defendant from revising its employment practices and policies or taking other personnel actions during the term of this Settlement Agreement so long as such actions would not violate the terms of this Settlement Agreement.

C.  <u>Modifications</u>.  Except as specifically provided for herein, this Settlement Agreement may not be amended or modified except with the express written consent of the Parties.

D.  <u>Exhibits</u>.  The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

E.  <u>Notices to Counsel</u>.  All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and by overnight mail and e-mail to counsel for the respective Parties (specifically, to Linda D. Friedman and Suzanne E. Bish for the Class and Kenneth J. Turnbull of Morgan, Lewis & Bockius LLP and Brad S. Karp of Paul, Weiss, Rifkind, Wharton & Garrison LLP, for Defendant) at their respective addresses set forth below (or at such other address as any such party or counsel may designate in a subsequent notice).

F.  <u>Failure to Insist on Strict Compliance</u>.  The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

G.  <u>Settlement Agreement Binding</u>.  This Settlement Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors, and assigns; provided, however, that this Settlement Agreement shall not inure to the benefit of any third party.

H.  <u>Dispute Resolution Mechanisms</u>.  The Parties will work diligently and in good faith to resolve all disputes that may arise between them concerning the rights, obligations, and duties of the Parties to this Agreement.  In the event that the Parties cannot agree, the Parties will attempt to resolve the dispute with the facilitation of a mediator.  In the event that mediation is

49

unsuccessful, then either party may institute an enforcement action. Settlement Class Members will have no individual right to enforce the terms of the Settlement Agreement. Rather, only Defendant and Named Plaintiffs, through Class Counsel, may seek to enforce the terms of the Settlement Agreement. In any action brought to enforce this Agreement, the Court may, in its discretion, award reasonable attorneys' fees and expenses to the prevailing party.

I.     No Drafting Presumption. All Parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

J.     Dispute As To Meaning of Agreement Terms. In the event of any dispute or disagreement with respect to the meaning, effect, or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the Parties agree that such dispute will be resolved and adjudicated only in accordance with the dispute resolution provisions of Section XI.H of this Settlement Agreement.

K.     Interpretation of Terms. Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

L.     Paragraph and Section Headings. Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

M.     Counterparts. This Settlement Agreement may be executed in counterparts. Each signed counterpart together with the others shall constitute the full Settlement Agreement.

N.     Agreement Binding. As of the date on which counsel for the Parties execute this Settlement Agreement, this Settlement Agreement shall be binding in all respects, subject to the terms and conditions set forth herein.

O.     <u>Parties' Authority</u>.  The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and to bind the Parties to the terms and conditions hereof.  All of the Parties acknowledge that through this Settlement Agreement and its attachments, they and the Class Members are being advised that they may consult an attorney regarding their participation in this Settlement Agreement, and the Parties acknowledge that they in fact have been represented by competent, experienced Counsel throughout all negotiations which preceded the execution of this Settlement Agreement, and this Settlement Agreement is made with the consent and advice of Counsel who have jointly prepared this Settlement Agreement.

Dated: August 31, 2018          **STOWELL & FRIEDMAN, LTD.**


By: _/s/ Linda D. Friedman_

Linda D. Friedman (lfriedman@sfltd.com)
Suzanne E. Bish (sbish@sfltd.com)
George S. Robot (grobot@sfltd.com)
303 W. Madison, Suite 2600
Chicago, IL 60606
Telephone: (312) 431-0888
Facsimile: (312) 431-0228

*Counsel for Plaintiffs and the Class*

Dated: Aug. 30, 2018

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: _____

Brad S. Karp (bkarp@paulweiss.com)
Daniel J. Toal (dtoal@paulweiss.com)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

**MORGAN, LEWIS & BOCKIUS LLP**

By: _____

Kenneth J. Turnbull (kenneth.turnbull@morganlewis.com)
Brendan T. Killeen (brendan.killeen@morganlewis.com)
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Attorneys for JPMorgan Chase Bank, N.A.*